### CIVIL MINUTES -- GENERAL

Case No.    **CV 16-8612-JFW**                                          Date:  April 20, 2017
            [2:15-bk-21624-ER]

            **CV 16-8642-JFW**
            [2:15-ap–1404-ER]
            [2:15-bk-21624-ER]

            **CV 16-8643-JFW**
            [2:15-ap–1406-ER]
            [2:15-bk-21626-ER]

Title:      In Re Harry and Theodosios Roussos

---

**PRESENT:**

      **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

    Shannon Reilly                                          None Present
    Courtroom Deputy                                        Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**
            None                                                        None

**PROCEEDINGS (IN CHAMBERS):**    **ORDER AFFIRMING BANKRUPTCY COURT'S ORDERS**

      On October 20, 2016, Appellant Theodosios T. Roussos ("Roussos") appealed the United States Bankruptcy Court's October 6, 2016 Settlement Approval Order and its October 7, 2016 Property Judgments.[1] On January 25, 2017, the Court set an identical briefing schedule in all three appeals. On February 15, 2017, Roussos filed his Opening Brief.[2] On March 8, 2017,

---

    [1] Case No. 2:16-cv-08612-JFW is the appeal of the Settlement Approval Order entered in Case No. 2:15-bk-21624-ER (jointly administered with Case No. 2:15-bk-21626-ER). Case No. 2:16-cv-08642-JFW is the appeal of the Property Judgment entered in Case No. 2:15-ap-01404-ER. Case No. 2:16-cv-08643-JFW is the appeal of the Property Judgment entered in Case No. 2:15-ap-01406-ER.

    [2] For reasons that are not clear, the docket reflects that two of Roussos's Opening Briefs were filed after the February 15, 2017 deadline. However, the docket in Case No. 16-8642-JFW indicates that Roussos's Opening Brief was timely filed. Because the briefs in all three appeals are

Appellee Howard M. Ehrenberg, Chapter 7 Trustee for the Estate of Appellant Theodosios Roussos (the "Trustee") filed his Opposition Brief. On March 15, 2017, Roussos filed his Reply Brief. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found these matters appropriate for submission on the papers without oral argument. The matters were, therefore, removed from the Court's March 20, 2017 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

I.      **Factual and Procedural Background**

On June 14, 1993, two brothers, Theodosios Roussos and Harry Roussos (collectively, the "Roussos Brothers") filed separate Chapter 11 petitions commencing their respective bankruptcy cases, specifically Case No. 2:15-bk-21624-ER, *In re Harry Roussos*, and Case No. 2:15-bk-21626-ER, *In re Theodosios Roussos.* On May 9, 1994, in their Chapter 11 bankruptcy cases, the Roussos Brothers filed a Motion By Debtor-In-Possession for Order Authorizing Sale of Real Property Free and Clear of Co-Owner Interests and Liens, and Authorizing Disbursement of Sales Proceeds (the "Sale Motion"). In the Sale Motion, the Roussos Brothers sought approval of the sale of the apartment building located at 2727-2741 Abbot Kinney Boulevard, Venice, California (the "Abbot Kinney Property") to OF Enterprises, LP ("OF") and the apartment building located at 153 San Vicente Boulevard, Santa Monica, California (the "San Vicente Property") (collectively, the "Properties") to SMB Investors Associates, LP ("SMB").[3] On October 19, 1994, pursuant to the Sale Order, the Roussos Brothers executed a grant deed conveying title to the "Abbot Kinney Property to O.F., which was recorded on October 24, 1994. On November 29, 1994, pursuant to the Sale Order, the Roussos Brothers executed a grant deed conveying title to the San Vicente Property to S.M.B., which was recorded on December 5, 1994.

---

identical, the Court considers Roussos's Opening Briefs as timely filed in all three appeals, regardless of what dates appear on the docket.

   [3] The Roussos Brothers are co-trustees of both the S.M.B. Investors Associates Irrevocable Trust (the "SMB Trust") and the O.F. Management Irrevocable Trust (the "OF Trust"). OF is a California limited partnership and holds record title to the Abbot Kinney Property. OF is a business entity in good standing, as reflected by the records of the California Secretary of State. The OF Trust owns a 99% interest in OF. Liro, Inc. ("Liro") is a California corporation and is the general partner of OF. Liro owns a 1% interest in OF as its sole general partner. Liro was a suspended business entity, as reflected by the records of the California Secretary of State. Liro was suspended for failure to file the Statement of Information required by Cal. Corp. Code § 1502, and for failure to meet its tax obligations. SMB is a California limited partnership and holds record title to the San Vicente Property. SMB Trust owns a 99% interest in SMB. SMB Management, Inc. ("SMB Management") is a California corporation and is the general partner of SMB. SMB Management owns a 1% interest in SMB as its sole general partner. SMB was suspended for failure to meet its tax obligations, as reflected by the records of the California Secretary of State. None of these relationships were known or disclosed to the Bankruptcy Court in connection with the Sale Motion in 1994. In this Order, OF, SMB, SMB Management, and Liro will be referred to collectively as the "Entities."

In July 2015, the bankruptcy cases of the Roussos Brothers were reopened when a creditor, Lula Michaelides, discovered that the Roussos Brothers had committed a fraud on the Bankruptcy Court in 1994.[4] Howard M. Ehrenberg was appointed as the Chapter 7 Trustee. After the Trustee concluded that the Roussos Brothers had orchestrated a fraud on the Bankruptcy Court in 1994, the Trustee filed adversary proceedings against the Roussos Brothers and others who were involved with the purportedly fraudulent sale of the Properties. These actions were entitled: (1) *Howard M. Ehrenberg v. Theodosios Roussos, Harry Roussos, Christine Roussos, Paula Roussos, OF, Liro, SMB, SMB Management, Chase Bank, N.A., OneWest Bank, N.A., and CIT Bank, N.A.*, Case No. 2:15-ap–1404-ER; and (2) *Howard M. Ehrenberg v. Theodosios Roussos, Harry Roussos, Christine Roussos, Paula Roussos, OF, Liro, SMB, SMB Management, Chase Bank, N.A., OneWest Bank, N.A., and CIT Bank, N.A.*, Case No. 2:15-ap–1406-ER. In order to prevent any transfer of the properties subject to the adversary proceedings, the Trustee filed a Motion for Order Imposing Stay Pursuant to 11 U.S.C. § 105(a) (the "Initial Stay Motion") on August 25, 2015, seeking to enjoin the arbitration to avoid further harm to the creditors.

On September 30, 2015, the Bankruptcy Court granted the Initial Stay Motion, and enjoined the arbitration through December 23, 2015, without prejudice to the Trustee filing a renewed motion for injunctive relief in the adversary proceedings. On November 25, 2015, the Trustee filed a Motion for Preliminary Injunction Re Verified Complaint (1) for Declaratory Relief; (2) To Vacate Sale for Fraud on the Court; (3) To Quiet Title; (4) for Turnover of Property; (5) for Fraud; (6) for Breach of Fiduciary Duty; and (7) for Aiding and Abetting Breach of Fiduciary Duty in each of the adversary proceedings (the "Second Stay Motions") in order to maintain the status quo pending a final judgment or settlement in the adversary proceedings. The Bankruptcy Court granted the Trustee's Second Stay Motions, and a preliminary injunction was issued in both adversary proceedings on December 21, 2015. On January 27, 2016, Theodosios Roussos and his wife, Paula, filed notices of appeal of the December 21, 2015 Orders, and elected to have them heard in the District Court, where they were assigned the following case numbers: Case No. 2:16-cv-00601-JFW and Case No. 2:16-cv-00607-JFW.

On June 27, 2016, after briefing by the parties, this Court affirmed the Bankruptcy Court's December 21, 2015 Order in each of the cases. Theodosios Roussos and his wife, Paula, separately appealed the District Court's June 27, 2016 Orders to the Ninth Circuit, where they were assigned the following case numbers: Case No. 16-56065 and Case No. 16-56066. The Ninth

---

[4] The Roussos Brothers' fraud was discovered by Michaelides as a result of evidence produced in an arbitration proceeding between the Roussos Brothers to resolve their disputes regarding the ownership and management of various properties and entities. The arbitration was commenced on June 19, 2012, when Harry Roussos and his wife, Christine, filed a petition to compel arbitration against Theodosios Roussos and his wife, Paula, in Los Angeles Superior Court, which was assigned Case No. BS138099. On June 6, 2016, the Honorable John P. Shook (Ret.) (the "Arbitrator"), serving as arbitrator, issued his "Order No. Twenty-Seven," whereby he appointed Sarah Daly as the "managing director to manage the affairs for Liro, Inc. and S.M.B. Management, Inc., effective immediately." Because Liro is the general partner of O.F. and SMB Management is the general partner of SMB, the Arbitrator's Order No. 27 had the effect of appointing Daly as the manager/director/general partner of all of the Entities.

Circuit consolidated the two appeals, the parties filed their respective briefs, and oral argument was scheduled for January 10, 2017. On November 14, 2016, the Trustee filed a Motion for Order (1) Dismissing Consolidated Appeals as Moot and (2) Continuing Oral Argument Pending Ruling on Motion to Dismiss. In his motion, the Trustee sought dismissal of the consolidated appeals as moot because the Trustee had entered into a settlement agreement with the majority of the defendants in the underlying adversary proceedings, including Harry Roussos and his wife, Christine.[5] The settlement agreement provided that the two fraudulently sold apartment buildings would be returned to the Roussos Brothers' bankruptcy estates. The settlement agreement was approved by the Bankruptcy Court on October 6, 2016 (the "Settlement Approval Order"), and implemented, in part, by judgments entered on October 7, 2016 (collectively, the "Property Judgments"), which (1) voided the original sale order; (2) cancelled the grant deeds originally conveying title to the properties to OF and SMB; and (3) vacated the December 21, 2015 preliminary injunction.[6] On January 4, 2017, the Ninth Circuit granted the Trustee's motion and dismissed the consolidated appeals as moot.

On October 20, 2016, Theodosios Roussos appealed the Settlement Approval Order and the Property Judgments to the United States Bankruptcy Appellate Panel for the Ninth Circuit.[7] On November 17, 2016, the Trustee elected to have the appeals of the Settlement Approval Order and the Property Judgments transferred to the District Court. As a result, the five appeals were transferred and assigned the following case numbers: Case No. 2:16-cv-08612-JFW (Settlement Approval Order in Case No. 2:15-bk-21624-ER (jointly administered with Case No. 2:15-bk-21626-ER)); Case No. 2:16-cv-08613-JFW (Settlement Approval Order); Case No. 2:16-cv-08642-JFW (Property Judgment in Case No. 2:15-ap-01404-ER); Case No. 2:16-cv-08643-JFW (Property Judgment in Case No. 2:15-ap-01406-ER); and Case No. 2:16-cv-09115-JFW (Settlement Approval Order).[8] In this Order, the Court addresses the three remaining appeals.

## II. Appellate Issues

Appellant presents the following issues on appeal:

1. Whether the Bankruptcy Court erred in approving the Settlement Agreement and entering the Property Judgments because it did not "provide a full and impartial review of a settlement, or a [sic] turned a blind eye to a factual circumstances [sic] smacking of bad

---

[5] Theodosios Roussos and his wife, Paula, were not parties to the settlement agreement.

[6] Neither the Settlement Approval Order nor the Property Judgments are subject to a stay, and the Trustee has assumed control and possession of the two apartment buildings for the benefit of the Roussos Brothers' creditors.

[7] Theodosios Roussos's wife, Paula, did not appeal the Settlement Approval Order or the Property Judgments.

[8] On January 23, 2017, Case No. 2:16-cv-08613-JFW (Settlement Approval Order) and Case No. 2:16-cv-09115-JFW (Settlement Approval Order) were dismissed as duplicative of Case No. 2:16-cv-08612-JFW (Settlement Approval Order) with the consent of Appellant Theodosios Roussos.

faith and collusion." Appellant's Opening Brief, p. 14.

2. Whether the Bankruptcy Court erred in approving the Settlement Agreement and entering the Property Judgments because "Daly did not have corporate authority under the governing corporate documents" to enter into the settlement. *Id.*

3. Whether the Bankruptcy Court erred in approving the Settlement Agreement and entering the Property Judgments because Appellant had not "waived the right to challenge the capacity of the Corporate Appellees"? *Id.*

4. Whether the Bankruptcy Court erred in approving the Settlement Agreement and entering the Property Judgments because "the settlement violated the distribution scheme of the Bankruptcy Code." *Id.*

5. Whether the Bankruptcy Court "erred in making good faith findings" because they were unavailable under the facts of this case. *Id.*

## III.   Legal Standard[9]

A "district court functions as an appellate court in reviewing a bankruptcy decision and applies the same standards of review as a federal court of appeals." *In re Crystal Props., Ltd.*, 268 F.3d 743, 755 (9th Cir. 2001). Accordingly, "[a] district court reviews a bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code *de novo*." *In re Orange Cnty. Nursery, Inc.*, 439 B.R. 144, 148 (C.D. Cal. 2010). It reviews factual findings for clear error, and it "must accept the bankruptcy court's findings of fact unless, upon review, the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009) (*citing Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004)).

A bankruptcy court's decision to approve a compromise is reviewed for abuse of discretion. *Martin v. Kane* (*In re A & C Props.*), 784 F.2d 1377, 1380 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 (1986); *CAM/RPC Elecs. v. Robertson* (*In re MGS Mktg.*), 111 B.R. 264, 266–67 (9th Cir. BAP 1990). Under the abuse of discretion standard, the district court cannot reverse the bankruptcy court's ruling unless it has a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir. 1996).

A court's determination of the good faith or lack of good faith of a settlement is reviewed for

---

[9] Appellant argues that Appellate Issues Nos. 2, 3, and 4 should be reviewed *de novo*. The Trustee seems to argue that all the Appellate Issues should be reviewed under an abuse of discretion standard (except for the determination of whether a good faith settlement applies to a party or claim, which the Trustee argues should be reviewed under the *de novo* standard). However, the Court concludes that under either standard of review, the Bankruptcy Court's October 6, 2016 Settlement Approval Order and October 7, 2016 Property Judgments should be affirmed.

an abuse of discretion. *Mason and Dixon Intermodal, Inc. v. Lapmaster International, LLC*, 632 F.3d 1056 (9th Cir. 2011); *see also KS Resources Ltd. v. A.W.L.I Group of Florida, Inc.*, 567 Fed. Appx. 561 (9th Cir. 2014).

IV. Discussion

    A. Approval of the Settlement Agreement

Appellant argues that the Bankruptcy Court erred in approving the Settlement Agreement and entering the Property Judgments because it did not provide a full and impartial review of the settlement and ignored clear evidence of bad faith and collusion. The Court disagrees. The Court concludes that the Bankruptcy Court undertook a full and impartial review of the settlement required by Bankruptcy Rule 9019 and applicable case law.

Bankruptcy Rule 9019 permits the Bankruptcy Court to approve a compromise or settlement. "In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane* (*In re A&C Properties*), 784 F.2d 1377, 1381 (9th Cir. 1986). "[C]ompromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in the sound discretion of the bankruptcy judge." *In re Sassalos*, 160 B.R. 646, 653 (D. Ore. 1993); *see also In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976) (holding that "the law favors compromise"). Generally, a compromise should be approved if it is "fair and equitable" and in "the best interests of the estate." *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988); *Blair*, 538 F.2d at 851. Compromises are favored in bankruptcy, and have become "a normal part of the process of reorganization." *Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968), *quoting Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939). In approving a settlement agreement, the Court must "canvass the issues and see whether the settlement `falls below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman* (*In re W.T. Grant* Co.), 699 F.2d 599, 608 (2d Cir. 1983).

Under the Bankruptcy Code, a trustee is vested with the standing and authority to seek compromises of legal and factual disputes. Therefore, settlements which have been negotiated by a trustee are entitled to deference. *See In* re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) (objecting creditors may not substitute their judgment for that of the trustee). In addition, when considering these factors, the court need only canvass the issues, and "a mini trial on the merits is not required." *Burton v. Ulrich* (*In re Schmitt*), 215 B.R. 417, 423 (9th Cir. BAP 1997).

In its "Memorandum of Decision Granting Emergency Motion to Approve Settlement Agreement [Doc. No. 571]" (the "Decision") entered on October 6, 2016, the Bankruptcy Court provided a detailed analysis of facts and law which fully supported its decision to approve the settlement. The Bankruptcy Court expressly found that the Trustee satisfied the *A&C Properties* test for approvals of compromises in the Ninth Circuit. Specifically, the Bankruptcy Court found that the first *A&C Properties* factor weighed in favor of approving the settlement because the Trustee possessed a strong likelihood of succeeding in the litigation and defending

against the lengthy appeal that was almost certain to be filed by the Roussos Brothers. Thus, the settlement would result in immediate funds for the estate and resolve numerous disputes between the parties. The Bankruptcy Court found that the second *A&C Properties* factor weighed in favor of approving the settlement because even if the Trustee obtained judgment in his favor, there was a substantial and significant risk that the Roussos Brothers would continue to obstruct the Trustee's efforts to enforce the judgment against the Roussos Brothers. In contrast, the settlement provided that the Trustee would receive immediate title to and physical control over the Properties. The Bankruptcy Court found, and it was not seriously disputed, that the third *A&C Properties* factor weighed in favor of approving the settlement because the litigation was complex and the trial would be lengthy. The Bankruptcy Court found that the fourth *A&C Properties* factor weighed in favor of approving the settlement because the settlement would allow creditors to receive approximately 100% of their claims. Each of these findings by the Bankruptcy Court is amply supported by the record.

In addition, the mere fact that the motion to approve the settlement agreement was heard on an expedited basis – due to the impending trial date set by the Bankruptcy Court – does not lead to the conclusion that the Bankruptcy Court did not conduct a full and fair assessment of the compromise. The Roussos Brothers' bankruptcy cases were reopened in July 2015, more than a year prior to the hearing on the motion to approve the settlement agreement. During that time, there were countless motions and hearings, and the Bankruptcy Court became intimately familiar with the factual and legal issues involved in these cases, which were ultimately presented to the Bankruptcy Court in the context of the motion to approve the settlement agreement. Furthermore, although Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure prescribe a minimum amount of notice for a motion seeking approval of a compromise, Bankruptcy Courts have discretion to reduce or eliminate the notice period for settlements. In fact, the Local Bankruptcy Rules specifically affords Bankruptcy Courts the right to shorten the notice period for cause shown. In this case, the Trustee filed an application to shorten the regular twenty-one day notice period because the looming trial dates established exigent circumstances requiring the court to act quickly. However, in agreeing to shorten the regular notice period, the Bankruptcy Court did not foreclose the right of Appellant, or any other party who received notice of the motion to approve the settlement agreement, from fully contesting the settlement. In fact, Appellant filed a lengthy and detailed opposition raising the same issues he now raises in this appeal.

Despite Appellant's argument to the contrary, the Bankruptcy Court's refusal to adopt Appellant's specious theory of collusion and undisclosed conflicts does not support his claim that the Bankruptcy Court rushed to approve the settlement in order to prevent the parties from conducting discovery on these issues. The Bankruptcy Court was not required to permit discovery and the cross examination of witnesses prior to granting the motion to approve the settlement. Moreover, a trustee seeking approval of a settlement is not required to prove it would have been impossible to obtain a superior result by trying the case. *Greif & Co. v. Shapiro* (*In re Western Funding Inc.*), 550 B.R. 841, 851 (9th Cir. BAP 2016) ("If this were required, the settlement approval process would degenerate into a trial of the underlying claims, which would defeat the purpose of settling").

    **B.**    **Authority to Enter the Settlement Agreement**

Appellant argues that the Bankruptcy Court erred in approving the Settlement Agreement

and entering the Property Judgments because the Entities lacked authority to enter into the settlement. However, the Court concludes there was no error because, as the Bankruptcy Court found, the Entities, acting through Sarah Daly, the arbitrator appointed managing director of Liro and SMB Management, had the authority to enter into the Settlement Agreement. As the Bankruptcy Court correctly held, because the Roussos Brothers subjected themselves to the decisions of Judge Shook by agreeing to binding arbitration, they necessarily agreed to Judge Shook's appointment of Daly as the managing director of Liro and SMB Management. Because Liro is the general partner of OF and SMB Management is the general partner of SMB, Judge Shook's order had the effect of making Daly the managing director of all of the Entities.

In his order appointing Daly as the managing director, Judge Shook incorporated by reference the Bankruptcy Court's Management Order, explaining that the Management Order set forth the scope of Daly's authority. The Management Order provided that Daly had the authority to "manage the affairs" of the Entities, and specified that Daly's responsibilities included hiring and paying counsel to represent the Entities. The Bankruptcy Court found that the Management Order granted Daly the authority to enter into the Settlement Agreement because Daly's authority to "manage the affairs" of the Entities necessarily included the authority to settle litigation involving the Entities. The Bankruptcy Court also found that Daly's authority to settle was reinforced by the Management Order's provisions permitting Daly to hire counsel to represent the Entities because the authority to hire counsel would be meaningless unless it also included the authority to direct counsel to either settle or continue to defend against the Trustee's litigation.

Appellant also argued that the Settlement Agreement was void because it provided for the sale of the Properties in contravention of the relevant provisions of the SMB and OF Partnership Agreements. However, the Arbitrator's July 29, 2016 Statement of Decision and Judgment in Binding Arbitration (the "Arbitrator's Decision") provided for the marketing and sale of the Properties, and specifically provided that the sales were to occur even if the voting requirements of the Partnership Agreements were not satisfied. Although Appellant argued to the Bankruptcy Court that the Arbitrator's Decision had not been confirmed by the Superior Court, and, thus, could not serve as the basis for the Entities' authority to enter into the Settlement Agreement, California Code of Civil Procedure §1287.6 provides that an arbitration decision "that has not been confirmed or vacated has the same force and effect as a contract in writing between the parties to the arbitration." Therefore, the Bankruptcy Court did not err in concluding that the various provisions of the Partnership Agreement were superseded by the Arbitrator's Decision.

### C. Capacity to Enter the Settlement Agreement

Appellant argues that the Bankruptcy Court erred in approving the Settlement Agreement and entering the Property Judgments because Liro and SMB Management lacked the requisite corporate capacity to enter into the settlement. Specifically, Appellant argues that because Liro and SMB Management are suspended business entities, as reflected in the records of the California Secretary of State, they lacked the corporate capacity to participate in the litigation or sign the Settlement Agreement. However, the Court concludes, as the Bankruptcy Court did, that Appellant has long since waived that argument.

Generally, if a corporation has been suspended for failure to meet its tax obligations, the corporation "shall not be entitled to sell, transfer, or exchange real property in California during the

period of forfeiture or suspension." Cal. Revenue and Tax Code §23302(d).  In addition, a corporation that has been suspended – either for failure to comply with tax obligations or for failure to file the Statement of Information – is "disabled from participating in any litigation activities." *Palm Valley Homeowners Assn, Inc. v. Design MTC*, 85 Cal. App. 4th 553, 560 (2000).

In this case, OF and SMB, which held record title to the Properties, were not suspended.  As a result, OF and SMB were able to enter into the Settlement Agreement and transfer the Properties under the terms of the Settlement Agreement.  Because it was OF and SMB who transferred the Properties – and not Liro and SMB Management – California Revenue and Tax Code §23302(d) was not a bar to those property transfers.  Therefore, the sole issue was whether Liro and SMB Management lacked the capacity to participate in the litigation – and sign the Settlement Agreement – as a result of their suspended status.

The issue of the suspended status of Liro and SMB Management was raised by Appellant for the first time in his opposition to the motion to approve of the settlement.  The Court agrees with the Bankruptcy Court that Appellant waived the right to raise the issue of the suspended status of Liro and SMB Management.  *See Ctr. for Self-Improvement & Cmty. Dev. v. Lennar Corp.*, 173 Cal. App. 4th 1543, 1552-53 (2009) ("Corporate incapacity is nothing more than a legal disability, depriving the party of the right to come into court and represent its own interests.  As such, lack of capacity is not a jurisdictional defect and is waived if not properly raised.  Not surprisingly, unless mandated by governing statute, the capacity of the plaintiff to sue is not an element of a cause of action and the plaintiff corporation need not allege it is qualified to do business in this state or that it has paid all state taxes.  Accordingly, the suspended status of corporate powers at the time of filing suit does not impede the trial court's jurisdiction to proceed, nor does a suspension after suit commences but before rendition of judgment deprive the court of jurisdiction or render the judgment void").  Liro and SMB Management first appeared in the Roussos Brothers' bankruptcy adversary proceedings on September 28, 2015, and from their initial appearance, they actively participated in the litigation.  Prior to Appellant raising the issue in his opposition to the motion to approve the settlement, no party raised the issue of Liro's and SMB Management's suspended status, including Liro's and SMB Management's own counsel.  In fact, as the Bankruptcy Court astutely pointed out, Appellant was "happy to ignore" Liro's and SMB Management's suspended status during the time that Liro's and SMB Management's position aligned with that of Appellant in opposing settlement.  It was only when Liro and SMB Management (along with OF and SMB) entered into a settlement agreement against Appellant's wishes that corporate capacity suddenly became an issue.  This Court agrees with the Bankruptcy Court that Appellant's attempt to raise the corporate capacity issue at such a late date was nothing more than a bad faith attempt to obstruct or "scuttle" settlement and cause additional delay.

### D.     Distribution Pursuant to Section 726 of the Bankruptcy Code

Roussos argues that the Bankruptcy Court erred in approving the Settlement Agreement and entering the Property Judgments because the settlement violates the required distribution scheme of the Bankruptcy Code.

A central policy of the Bankruptcy Code is the equitable distribution of a debtor's assets among its creditors.  *Begier v. IRS*, 496 U.S. 53, 58 (1990); *In re McCafferty*, 96 F.3d 192, 196 (6th Cir. 1996).  Similarly, the Code is designed to achieve an "equality of treatment among similarly

situated creditors." *In re Lockard*, 884 F.2d 1171, 1178 (9th Cir. 1989); *In re Jet Florida System, Inc.*, 841 F.2d 1082, 1083 (11th Cir. 1988). Another objective of the Code is to accomplish a prompt and efficient administration of the bankruptcy estate. *Katchen v. Landy*, 382 U.S. 323, 328-29 (1966); *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995); 11 U.S.C. § 704.

In this case, the Court concludes that the Bankruptcy Court correctly determined that the settlement did not violate the required distribution scheme embodied in 11 U.S.C. § 726 of the Bankruptcy Code. In order to understand the distribution scheme embodied in 11 U.S.C. § 726, it is important to examine the definition of several of its terms. "Creditor," which is defined by 11 U.S.C. § 101, is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Section 101(5) of the Bankruptcy Code defines the term "claim" as a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Thus, the term "claim" includes either a "right to payment" or a "right to an equitable remedy" for a debtor's breach of performance so long as the breach gives rise to a right to payment. In addition, the term "debt" is defined as a "liability on a claim." 11 U.S.C. § 101(12). Therefore, a "creditor" has a "claim" against the debtor and the debtor owes a "debt" to the "creditor." Alan N. Resnick & Henry J. Sommer, 2 *Collier on Bankruptcy* ¶101.12 (16th ed. 2015). Moreover, "[a]bsent an overriding federal interest, the existence of a claim in bankruptcy is generally determined by state law." *Securities Exchange Comm'n v.* Cross (*In re Cross*), 218 B.R. 76, 78 (9th Cir. BAP 1998).

Section 726(a) sets forth five classes of creditors holding claims that must be paid before a debtor is entitled to any surplus. The right of a class of claimants to receive a distribution flows down, as outlined in each subsection of priorities contained in Section 726(a)(1)-(5), with no subordinate class receiving anything unless the preceding class has been paid in full and "[w]hen there is a class of claims that an estate cannot pay in full, § 726(b) directs the court to divide the assets pro rata among all claims in the class that cannot be fully satisfied." *In re Jonick Deli Corp.*, 263 B.R. 196 (S.D.N.Y. 2001). Once the five superior classes of creditors are paid in full, a debtor is entitled to a distribution of any residual surplus under Section 726(a)(6).

In this case, because the Trustee will use the payment from the settlement to pay the claims of creditors according to the priority scheme found in Section 726(a), it is a misnomer to suggest that the payment which will be made to Harry Roussos, who is a debtor, is the legal equivalent of a surplus payment under Section 726(a)(6). Any consideration flowing to Harry Roussos and the Entities from the settlement agreement is in exchange for their settlement of the Verified

Complaints.[10] Accordingly, the Trustee's payment to Harry Roussos will not violate Section 726(a)'s priority distribution scheme because the payment will be made pursuant to the settlement agreement and not as a surplus payment being made prior to the payment of senior creditor claims. Instead, all creditors of the Roussos Brothers' estates will be paid from the settlement according to Section 726(a) and any surplus in Appellant's estate will be paid to Appellant at the conclusion of the case. This fully complies with the requirements of Section 726(a).

The fact that the Settlement Agreement complies with Section 726(a) and does not discriminate against any of the Roussos Brothers' creditors is further demonstrated by the fact that none of the creditors opposed the motion to approve the settlement agreement. In fact, only Appellant opposed the motion and is now challenging the Settlement Approval Order.

### E. The Bankruptcy Court's Determination of Good Faith Settlement

Appellant also argues that the Bankruptcy Court erred in finding that the settlement was entered into in good faith under California law. As the Trustee argues, the Bankruptcy Court's finding of good faith was not a condition of the settlement and was effectively severed from the motion to approve the settlement agreement and independently determined in a later proceeding by a subsequent order. Nonetheless, the Court has considered Appellant's argument, and concludes that the Bankruptcy Court did not err in making the good faith finding.

In *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488 (1985), the California Supreme Court explained that Sections 877 and 877.6 were enacted to remedy the inability of joint tortfeasors, at common law, to seek contribution against co-defendants. *Id.* at 493-94 ("The primary purpose of the bill was the equitable objective of ameliorating the punitive effect of the no-contribution rule upon joint tortfeasors"). The consequence of the rigid no-contribution rule was to make it less likely that individual defendants in multi-defendant suits would want to settle with the plaintiff. *Id.* at 493. With the enactment of Sections 877 and 877.6, individual defendants can seek a finding that their settlement is a good-faith settlement, thereby preventing co-defendants from pursuing contribution claims against them. The Court in *Tech-Bilt*, in adopting a "reasonable range test," listed the following factors to consider when determining whether a settlement is a good faith settlement:

> [T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. Finally, practical considerations

---

[10] In addition, Appellant, like Harry Roussos, will receive $1,500,000 under the Settlement Agreement. However, because Appellant chose not to settle, his distribution, unlike Harry Roussos's distribution, is subject to levy by Michaelides. Appellant chose not to settle, and, thus, is not entitled to the same benefit as those who did.

obviously require that the evaluation be made on the basis of information available at the time of settlement. A defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.

*Id.* at 499 (internal citations and quotations omitted).

The *Tech-Bilt* decision makes clear that an acceptable settlement range – like that under a Rule 9019 analysis – is extremely broad. *Id.* at 499-501 (noting that (i) settlement figure must not be "grossly disproportionate" to what a reasonable person would pay, (ii) permitting an objector to demonstrate, "if he can, that the settlement is so far "out of the ballpark" such that it is inconsistent with equitable objectives of the statute," and (iii) emphasizing the "broad parameters of the "ballpark" within which settlements will be deemed to be in good faith"). Similar to cases interpreting Rule 9019, a party objecting to the good faith of a settlement has no right to a mini-trial on valuation. Instead, the procedure for determining whether the settlement was made in good faith is left to the sound discretion of the trial court. *Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 880 n. 23 (1987). The mere fact that a settling party may be shown to have paid less than its theoretical proportionate share of liability to the plaintiff does not establish any lack of good faith. *Tech-Bilt*, 38 Cal. 3d at 499. Thus, the process of determining whether a particular settlement actually satisfies the good faith standard under California law is not unlike that employed by bankruptcy courts in approving settlements proposed under the authority of Rule 9019.

Although not equivalent to a finding of good faith under Sections 877 and 877.6, Rule 9019 calls upon the bankruptcy court to exercise discretion that is analogous to that of California courts and does not expressly describe the standards to be applied in approving settlements. *See Protective Comm. for Indep. Stockholders*, 390 U.S. 414 (1968) (holding that settlements must be "fair and equitable" and bankruptcy judge must apprise "himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."); *see also In re Plant Insulation Co.*, 469 B.R. 843, 884-86 (Bankr. N.D. Cal. 2012), *aff'd,* 485 B.R. 203 (N.D. Cal. 2012), *rev'd on other grounds*, 734 F.3d 900 (9th Cir. 2013) (holding that "[t]he Rule 9019 standard is actually more exacting than the section 877.6 standard, because under Rule 9019 the party proposing the settlement has the burden of proof, while under section 877.6 the party opposing the settlement has the burden of proof").

Appellant argues that Section 877 is not applicable because the fraud on the court claim was not a tort. However, as the Bankruptcy Court correctly held, Appellant's argument ignores the fact that the settling defendants were seeking the Section 877 determination with respect to the settlement with Michaelides. The Settlement Agreement resolved all of Michaelides' claims against the settling defendants, which included tort liability for fraud based on alter ego theory.

Appellant raised a number of other arguments, each of which was properly rejected by the Bankruptcy Court. Having reviewed the settlement against the backdrop of the settling defendants' potential liability in the litigation, and based upon the evidence presented to it, the Bankruptcy Court found that: (1) the settling defendants entered into the settlement with Michaelides in good faith within the meaning of Section 877.6; and (2) the settlement discussions were conducted at arms-length and were free of collusion. As to the collusion issue, the Bankruptcy Court also found that the absence of collusion was demonstrated by the fact that

Theodosios and Paula Roussos had the opportunity to enter into the settlement on the same terms as Harry and Christine Roussos.

The Bankruptcy Court also correctly found that the settlement did not allocate a disproportionate share of liability to Theodosios and Paula Roussos. The cost of the settlement, according to the Bankruptcy Court, was borne by the Entities, in which the Roussos Brothers each hold ownership interests. The only advantage that Harry and Christine Roussos obtained by entering into the settlement was a limitation on the collection of Michaelides's judgment, and three to six months of rent-free living in the San Vicente Property. As the Bankruptcy Court observed, in comparison to the $11,000,000 settlement amount, these advantages were relatively inconsequential. In addition, these advantages were equally available to Appellant had he, like Harry and Christine Roussos, joined in the settlement.

Appellant also argued that the settlement appeared collusive because the settlement amount was too high. Appellant claimed that the real purpose of the settlement was to provide the attorneys a windfall of fees. However, the Bankruptcy Court properly rejected this frivolous argument. Harry and Christine Roussos were represented by competent counsel and freely entered into the settlement, and they would not have done so had they not believed that the settlement was in their best interests. Generally, the concern that arises in the context of a Section 877 determination is that by settling for too little, the settling defendants acted in collusion and prejudiced the non-settling parties. Accordingly, there is simply no support for Appellant's theory that collusion may be shown because the defendants allegedly settle for too much.

As the Bankruptcy Court concluded, Appellant's real reason to "scuttle" the settlement was his belief that the defendants could have obtained a better result if the cases had proceeded to trial. However, Appellant failed to demonstrate in opposing the settlement that the agreement was collusive, not in good faith, or in any way motivated by a desire to harm him. In addition, in determining the Section 877.6 issue, the Bankruptcy Court held that it was merely enforcing and implementing the Settlement Approval Order, not expanding upon it as Appellant has suggested in his opposition. *See Neary v. Padilla*, 222 F.3d 1184,1190 (9th Cir. 2000) (holding that with respect to a judgment or order that has been appealed, the trial court also retains jurisdiction to implement or enforce the judgment or order but may not alter or expand upon the judgment).

## V.     Conclusion

For all the foregoing reasons, the Bankruptcy Court's October 6, 2016 Settlement Approval Order and October 7, 2016 Property Judgments are **AFFIRMED**.

IT IS SO ORDERED.


CC: U.S. Bankrupcty Court